UNITED STATES DISTRICT COURT
For the DISTRICT OF MASSACHUSETTS

```
RECEIPT #_____43402____
AMOUNT $_____150___
SUMMONS ISSUED  Y-1
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____pr___
DATE___11-21-02___
```

SHAPOUR T. ALAM, )
                              )
     Plaintiff                   )
                              )
v.                           )    C.A. No.:
                              )
DOCUMENTUM, INC.     )
                              )
     Defendant.             )

**02 cv 12268 DPW**

## **VERIFIED COMPLAINT**

### **Nature of the Action**

1.    This is an action brought by the Plaintiff Shapour T. Alam ("Alam") for civil enforcement of various state and federal statutes prohibiting the Defendant's unauthorized access of his personal computer files, system and network to gain an advantage in a business negotiation to settle a potential lawsuit and for other purposes. Alam brings causes of action against his former employer, Documentum, Inc. ("DI") for a violation of the Federal Stored Wire and Electronic Communications Transactional Records Access Act, 18 U.S.C. c. 121 §§ 2701-2707 and the Computer Fraud and Abuse Act, 18 U.S.C. c. 47 §§ 1030. Alam also brings actions for violations of Massachusetts' Interception of Wire and Oral Communications Statute ("Mass.G.L.") c. 272, § 99Q; Delaware's Computer Related Offenses Statute (Delaware Code §§ 932, 941); California's Penal Code § 502(c) and (e)(1), (2) and (4); Mass.G.L. c. 93A §§ 2 and 11, Mass.G.L. c. 214 § 1B and common law



claims for invasion of privacy, breach of implied covenant of good faith and fair dealing.

## PARTIES

2.  Alam is a former employee of the defendant DI. At all relevant times, Alam was a Massachusetts resident, living at 11 Brooks Hill Road, in the Town of Lincoln, County of Middlesex, Commonwealth of Massachusetts. Alam is an individual of Bangladeshi descent, a person of color and an adherent to the Muslim faith.

3.  DI is a Delaware corporation, registered with the Attorney General for the Commonwealth of Massachusetts as a foreign corporation, with a usual address of 6801 Koll Center Parkway, Pleasanton, CA and with a local address at 25 Corporate Drive, Burlington, County of Middlesex, Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1342 and 1345. This court has Subject Matter Jurisdiction due to federal question and diversity.

5.  This Court has Personal Jurisdiction over this matter because the conduct of the Defendant in engaging in the alleged illegal and improper acts, deeds and schemes involved a person who resided within the jurisdiction of the United States District Court, District of Massachusetts.

6. Venue is proper in the District of Massachusetts because at all relevant times Alam worked for DI at its offices in Burlington, Massachusetts.

## BACKGROUND FACTS

### DI's Acquisition of Boxcar

7. Until its acquisition by DI on January 23, 2002, Alam was a co-Founder and Director, and the President and CEO of Boxcar Software, Inc. ("Boxcar"), a Delaware corporation with its principal place of business in Massachusetts

8. On December 14, 2001, Alam and other principals of Boxcar met in Boston, Massachusetts with Randy Ziegler ("Ziegler"), Director of Products for DI, and Howard Shao ("Shao"), Executive Vice President and Chief Technology Officer of DI. The purpose of the meeting was to discuss a proposed acquisition by DI of Boxcar.

### Promise of Employment to Alam to Induce Agreement

9. Ziegler and Shao told Alam that he would have a long-term role within the business planning and strategy group of DI if it was to acquire Boxcar. Alam was to report to Robert Tarkoff ("Tarkoff"), the executive Vice-President and Chief Strategy Officer of DI.

10. Alam relied on the representation of Ziegler and Shao that DI would provide a role for him within the business planning and strategy group ("Corporate Development") and Alam eventually approved the proposed acquisition. Alam was told by Tarkoff that he would be working in a transitional role for a minimum of six

3

months and then would be installed in the Corporate Development group at an annual salary of $100,000.

11. Despite this representation, and for reasons that were discriminatory and arbitrary as will be later herein described, Alam was terminated from DI in late April, 2002, despite the promise of at least six months of employment that induced him to approve the acquisition of Boxcar by DI in the first place.

### Alam's Claims for Payment

12. Immediately upon being informed of his termination, Alam asserted a claim for back pay and front pay. DI sought a release from Alam. Alam and DI commenced business negotiations by phone and through Alam's personal email accounts from his personal computers. DI called Alam several times a week in May and June, 2002, seeking his signature on a release.

### DI'S Break-Ins of Alam's Computers and E-Mail Accounts

13. During and after his termination from DI, Alam maintained personal email accounts with a New York company called "Mail.com", a subsidiary of Exact Advertising, Inc., as well as a California-based company called "Yahoo". After his termination from DI, Alam used both of these accounts for personal and non-DI business communications of a highly confidential nature with a number of financial institutions and corporations. Alam also has bank, brokerage, credit and travel accounts accessible by and to him from financial institutions.

14. These business communications involving "mail.com", which were completely independent of any dealings or business of DI, included and constituted

trade secrets of the third parties. and Alam took reasonable precautions to ensure that they would remain confidential.

15.     Alam used both the telephone and the email accounts to correspond with DI about his settlement package.

16.     Alam received confidential advice from individuals including attorneys on his negotiations with DI through the email account.

17.     On or about September of 2002. Alam noticed that he was receiving e-mail messages that had been open before he initially reviewed them. In investigating why his "new mail" was already "opened" before he reviewed them. Alam was told by representatives of "Mail.com" that there were suspicious access and interceptions of his email account and provided him with a list of the locations identified by Internet Protocol logs ("IP logs") from which the email account was accessed since May. 2002.

18.     The IP logs from Mail.com show that on at least twenty-three (23) occasions. a computer located at DI's California offices intercepted. interfered with and accessed his personal and business communications conducted through this account. These interceptions. interferences and accesses were without Alam's knowledge. authorization or consent. Attached hereto as Exhibit A is a true and genuine copy of the list of break-ins. their dates. and the information identifying the DI computer.

19.     The email break-ins correspond closely with days that Alam corresponded to DI by phone or email regarding his settlement negotiations and

sensitive business discussions in which he was engaged with third parties. On November 14, 2002 DI's Vice President and General Counsel Sayed Darwish told Alam's attorney that DI could not identify the cause or source of the break-ins and was no longer willing to cooperate with Alam on an investigation of the DI break-ins into his email account. Darwish said that Alam "should hire an IT consultant" to conduct his own investigation without any cooperation from DI.

20. On information and belief, DI willfully and intentionally spread computer viruses and / or software code, components or modules that opened electronic "backdoors" into Alam's personal computers without Alam's knowledge, authorization or consent. These electronic "backdoors" enabled DI to intercept, interfere with, access and copy Alam's electronic communications without Alam's knowledge, authorization or consent. These "backdoors" are also capable of reading most if not all files on Alam's computer, and accessing data to which only Alam has access, such as his banking, investing and credit accounts.

21. DI's break-ins into Alam's account and conversion of his trade secrets have compromised the confidentiality not only of Alam but also of the companies and institutions that correspond with him.

22. One of the most alarming confidentiality breaches caused by DI's break-ins involved a company in the Boston area that had retained Alam as an Advisor for strategic alternatives, including the possible acquisitions of several businesses.

23. This company corresponded with Alam via his email account about its highly confidential Mergers and Acquisitions and Corporate Development strategy.

24. Alam also conducted highly sensitive email correspondence with the company's majority shareholder and Board Member, a tier-one global private equity and venture capital investment firm, via the email account.

25. On information and belief, this company, its principal and institutional investors have suffered damage as a result of the breach of confidentiality caused by DI's violation of the email account.

26. Even after Alam and his attorney informed DI on October 18, 2002 of the break-ins into Alam's email account, the email break-ins by DI continued.

27. Alam has suffered damages as the result of DI's illegal activity.

## Alam's Termination from DI

28. On information and belief, DI was attempting to gain an unfair advantage in negotiations with Alam for a resolution concerning back pay and front pay from DI to Alam and a release from Alam to DI.

29. The reason DI required a release was, on information and belief, because it knew that Alam harbored a good-faith belief that he had experienced employment discrimination, and other claims, while at DI and was prepared to file a complaint pursuant to Massachusetts law and Title VII of the Civil Rights Act of 1964.

30. Alam experienced discrimination on the basis of his race, national origin and religion in that Alam was terminated from DI and replaced by a male

Caucasian with inferior experience and skills within three months of the acquisition of Boxcar by DI. Immediately upon signing the Boxcar acquisition "term-sheet" on December 21, 2001, Alam told Tarkoff that he was expecting to continue in a long-term role at DI in the Corporate Development group. In early to mid-January, Tarkoff told Alam that he would be included in the Corporate Development group after the six-month post-closing transition period.

31. Alam was provided assurances on several occasions by Ziegler and DI Director of Corporate Business Development David Thoeny ("Thoeny") that his long-term role would be with DI's Corporate Development team. Alam was told by Ziegler and Thoeny that he would consult with Tarkoff, Thoeny and others in the Corporate Development group to plan for his inclusion and work with that group. Thoeny, in fact, began to integrate Alam into the Corporate Development team on or about March, 2002.

32. On or about March, 2002, DI hired Byron Bardy ("Bardy"). Bardy is a Caucasian male and, on information and belief, is not a Muslim. Shortly after Bardy was hired, Tarkoff gave him the position and duties Alam had expected to receive. Alam has far superior Mergers and Acquisitions experience than Bardy, especially in the enterprise software sector. Shortly thereafter, in April 27, 2002, DI notified Alam that his employment would be terminated effective in two weeks.

33. In fact, when he informed Alam of his termination, Ziegler emphasized that it was not because of performance. The DI Human Resource professionals

initially assigned to Alam's outplacement confirmed this assurance and sent Alam his employment file which is free of negative performance reports.

34. Razi Karim, also of Bangladeshi background, and the only other non-white Muslim at Boxcar, was also summarily informed of his dismissal on the same day as Alam. This also occurred just a few months after the Boxcar acquisition and was for no apparent reason or business rationale. He, too, had superior credentials to the white non-Muslim who was retained for the Boxcar product-related sales role at DI.

35. After his termination, Alam learned for the first time that at the time of the Boxcar acquisition, the white non-Muslim executives of Boxcar were provided with opportunities for bonuses and stock options. Alam and Karim were given no stock options and were provided much lower bonus potential.

## COUNT I - VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

36. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 35 as if specifically set forth herein.

37. The Computer Fraud and Abuse Act 18 U.S.C. § 1030 prohibits any party from intentionally accessing a computer without authorization, or from accessing information from any protected computer if the conduct involved interstate or foreign communication.

38. The computers of Alam are protected computers because they are used in interstate commerce, as defined by section (e)(2)(B) of the Act.

38. DI intentionally intercepted Alam's wire and/or electronic communications and infiltrated his computer or computers with a computer virus so it could continue to intercept Alam's computer activity, in violation of the Act.

40. At the time of the interception, DI knew or should have known that it had no authority, permission or consent to conduct such interception.

41. As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered damages of more than $5,000 during any one year period and seeks damages pursuant to the civil liability section of the Act, section (g) together with interest, attorney's fees and costs.

## COUNT II - VIOLATION OF THE
## ELECTRONIC COMMUNICATIONS PRIVACY ACT

42. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35 and 37-41 as if specifically set forth herein.

43. DI intentionally accessed without authorization a facility through which an electronic communication service is provided, in violation of 18 U.S.C. c. 121 § 2701.

44. At the time of the access, DI knew or should have known that it had no authority, permission or consent to do so.

45. As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, including punitive damages, together with interest, attorney's fees and costs, pursuant to section 2707 of the Act, imposing civil liability for such violations.

## COUNT III - VIOLATION OF M.G.L. c. 272, § 99

46.   The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45 as if specifically set forth herein.

47.   DI, without permission, authority or consent to do so, intercepted, disclosed and/or used Alam's wire communications.

48.   DI, without permission, authority or consent to do so, violated Alam's personal, property and/or privacy interest.

49.   As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, including punitive damages, together with interest, attorney's fees and costs, as provided by Section Q of Massachusetts Generals Laws, c. 272 § 99.

## COUNT IV - VIOLATION OF DELAWARE LAW

50.   The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45 and 47- 49 as if specifically set forth herein.

51.   DI's unauthorized access to, and misuse of Alam's computer system information and email, violates Del. Code tit. 11, §§ 932 and 935.

52.   As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, together with interest, attorney's fees and costs, as provided by Del. Code tit. 11 § 941.

## COUNT V - VIOLATION OF CALIFORNIA LAW

53. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45, 47- 49 and 51-52 as if specifically set forth herein.

54. DI's knowing access of and unauthorized use of Alam's computer and email violate Cal. Penal Code. § 502(c)(1)-(2), (4), (6)-(8).

55. As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, together with punitive and exemplary damages, interest, attorney's fees and costs, pursuant to § (e)(1), (2) and (4).

## COUNT VI - INVASION OF PRIVACY UNDER G.L. c. 214, § 1B

56. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45, 47- 49, 51-52 and 54-55 as if specifically set forth herein.

57. According to Massachusetts law, individuals such as Alam have a right against unreasonable, substantial or serious interference with their privacy. The superior court shall have jurisdiction in equity to enforce such a right and in connection therewith to award damages.

58. DI's conduct, in intercepting, interfering with and accessing Alam's email, constitutes a violation of this right of privacy.

59. As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, together with interest, attorney's fees and costs.

## COUNT VII - BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

60. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45, 47-49, 51-52, 54-55 and 57-59 as if specifically set forth herein.

61. Implicit in this, as in every contract, was a covenant of good faith and fair dealing, including the covenant not to destroy the plaintiff's right to receive the benefits of his bargain.

62. DI failed to tell Alam that while it negotiated with him presumably in good faith it actually was negotiating in bad faith on the basis that it possessed material, confidential and private information derived from his email that put DI at a negotiating advantage, which shows an absence of good faith, and constitutes a breach of the implied covenant of good faith and fair dealing.

63. As a direct and proximate result of defendant's improper and illegal conduct, the plaintiff has suffered injury and seeks damages, together with interest and costs.

## COUNT VIII – FRAUD AND MISREPRESENTATION

64. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45, 47-49, 51-52, 54-55, 57-59 and 61-63 as if specifically set forth herein.

65. During negotiation for severance or back pay in the spring and summer of 2002, DI knew or should have known that DI was breaking into Alam's personal email accounts.

66. DI had a duty to inform Alam that one or more of its employees had broken into his email account and had obtained information therein.

67. Alam relied on DI's failure to speak in a situation in which it had a duty to speak. He was thereby damaged by DI's misrepresentation when was forced, without his knowledge, to engage in unfair negotiations because DI failed to tell him that it had obtained knowledge material to Alam's strategy in the negotiation through the information contained within the computer break-ins.

### COUNT IX – VIOLATION OF MASS.G.L. c. 93A § 2 and 11

68. The plaintiff repeats and incorporates by reference the allegations of Paragraphs 1-35, 37-41, 43-45, 47- 49, 51-52, 54-55, 57-59, 61-63 and 65-67 as if specifically set forth herein.

69. At all times relevant, the defendant was engaged in trade or commerce, as defined by M.G.L. c. 93A § 2.

70. The Plaintiff was, at all times relevant to this c. 93A claim, a former employee of the Defendant at the time of the alleged break-ins to his computer e-mail accounts.

71. The Defendant's conduct in its dealings with the Plaintiff, as set forth herein, constitutes unfair or deceptive acts or practices proscribed by and prohibited

by Mass.G.L. c. 93A §§ 2 and 11, in that the Defendant attempted to gain an unfair advantage in negotiating with the Plaintiff, and such conduct by the defendant was knowing, willful, purposeful and intentional.

72. The Plaintiff respectfully requests this Court award him damages against the defendants in an amount equal to $300,000, and those damages be multiplied by no less than two or more than three times that amount, plus his reasonable attorneys fees and costs arising from this litigation.

**WHEREFORE**, the plaintiff prays that the Court:

1. On Count I enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, in an amount equal to the economic damage suffered by Alam, which he estimates to be $300,000, along with reasonable attorneys fees and costs.

2. On Count II, enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of the Federal Stored Wire and Electronic Communications Transactional Records Access Act, 18 U.S.C. 2701 *et sec.*, in an amount equal to the economic damage suffered by Alam, which he estimates to be $300,000, along with punitive damages in the amount of $3 million, reasonable attorneys fees and costs.

3. On Count III, enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of Massachusetts General Laws, c. 272 § 99, in

an amount equal to the economic damage suffered by Alam, which he estimates to be $300,000, along with punitive damages in the amount of $3 million, reasonable attorneys fees and costs.

4. On Count IV, to the extent that Delaware law applied to this controversy, enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of Del. Code tit. 11 §§ 932 and 935, in an amount equal to the economic damage suffered by Alam, which he estimates to be $300,000, along with reasonable attorneys fees and costs.

5. On Count V, to the extent California law applies to this controversy, enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of California's Penal Code § 502(c)(1)-(2), (4), (6)-(8), in an amount equal to the economic damage suffered by Alam, which he estimates to be $300,000, along with punitive damages in the amount of $3 million, reasonable attorneys fees and costs.

6. On Count VI, enter judgment for plaintiff, and against the Defendant, for the Defendant's violation of Massachusetts General Laws, c. 214 § 1B, for invasion of privacy, in an amount he may prove at trial, including reasonable attorneys fees and costs.

7. On Counts VII enter judgment for plaintiff, and against the Defendant, for the Defendant's breach of implied contract in an amount equal to the damage suffered by Alam, which he estimates to be $300,000, along with reasonable attorneys fees and costs.

8.  On Count VIII. enter judgment for Plaintiff. and against the Defendant. for the Defendant's fraud and intentional and negligent misrepresentation. in an amount equal to the damage suffered by Alam. in addition to reasonable attorneys fees and costs.

9.  On Count IX. award judgment in favor of the Plaintiff and against the Defendant in an amount equal to $300.000. which represents moneys lost by the Plaintiff due to the Defendant's violation of Mass.G.L. c. 93A §§¶2 and 11. and multiply those damages by no less than two or more than three times that amount. plus award reasonable attorneys fees and costs arising from this litigation.

11. Enter such other relief in favor of the plaintiff as this Court deems fair and appropriate.

## JURY CLAIM

**THE PLAINTIFF HEREBY CLAIMS A TRIAL BY JURY ON ALL COUNTS TO WHICH HE IS ENTITLED AND REQUESTS A JURY ON ALL OTHER COUNTS.**

Respectfully submitted.

Shapour T. Alam.
By his Attorney.

Kenneth I. Gordon. BBO# 556762
63 Chatham Street
Boston. Massachusetts  02109
(617) 742-4602

## VERIFICATION

I. Shapour T. Alam. have read each and every allegation of the Verified Complaint filed herein. in 18 pages including this page. and verify under the pains and penalties of perjury that all facts of which I know on first-hand knowledge are true. and all facts pled on information and belief I believe to be true. to the best of my knowledge.

_____
Shapour T. Alam

# **EXHIBIT A**

Source: mail.com, email service provider

| | LOGON NAME | LOGON LOCATION / IP ADDRESS | LOGON DOMAIN NAME | TIME | COMMENTS |
|---|---|---|---|---|---|
| 1 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Jul 17 21:07:50 2002 | FROM DOCUMENTUM |
| 2 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Fri Jul 19 04:56:55 2002 | FROM DOCUMENTUM |
| 3 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Sat Jul 20 00:49:42 2002 | FROM DOCUMENTUM |
| 4 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Jul 24 23:01:06 2002 | FROM DOCUMENTUM |
| 5 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Fri Jul 26 20:41:43 2002 | FROM DOCUMENTUM |
| 6 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Sat Jul 27 01:59:11 2002 | FROM DOCUMENTUM |
| 7 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Mon Jul 29 00:12:32 2002 | FROM DOCUMENTUM |
| 8 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Tue Jul 30 15:09:40 2002 | FROM DOCUMENTUM |
| 9 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Tue Jul 30 23:33:17 2002 | FROM DOCUMENTUM |
| 10 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Jul 31 03:29:46 2002 | FROM DOCUMENTUM |
| 11 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Jul 31 17:24:32 2002 | FROM DOCUMENTUM |
| 12 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Jul 31 23:28:59 2002 | FROM DOCUMENTUM |
| 13 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Mon Aug 19 21:35:04 2002 | FROM DOCUMENTUM |
| 14 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Tue Aug 20 01:54:10 2002 | FROM DOCUMENTUM |
| 15 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Aug 21 01:43:42 2002 | FROM DOCUMENTUM |
| 16 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Aug 21 14:31:48 2002 | FROM DOCUMENTUM |
| 17 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Thu Aug 22 00:29:46 2002 | FROM DOCUMENTUM |
| 18 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Thu Aug 22 14:34:53 2002 | FROM DOCUMENTUM |
| 19 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Fri Aug 23 02:00:05 2002 | FROM DOCUMENTUM |
| 20 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Mon Aug 26 19:17:49 2002 | FROM DOCUMENTUM |
| 21 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Tue Aug 27 14:57:18 2002 | FROM DOCUMENTUM |
| 22 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Wed Aug 28 15:02:16 2002 | FROM DOCUMENTUM |
| 23 | shapour.alam:mail.com | 198.182.5.173 | cacheflow100e.documentum.com | Mon Sep 30 04:00:46 2002 | FROM DOCUMENTUM |